# EXHIBIT "A"

FHA Case No.
Loan No.
MIN:

## ADJUSTABLE-RATE NOTE
## HOME EQUITY CONVERSION
### (LIBOR One-Month Index (As Published In The Wall Street Journal)-Rate Caps)

### NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE. THIS NOTE LIMITS THE MAXIMUM RATE I MUST PAY.

**Commonwealth of Pennsylvania**

Date:   **May 22, 2014**
Property Address: **537 W RICHARDSON AVE, LANGHORNE, PA 19047**

1. **DEFINITIONS**
   "Borrower" means each person signing at the end of this Note. "Lender" means **Liberty Home Equity Solutions, Inc.** and its successors and assigns.  "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

2. **BORROWER'S PROMISE TO PAY; INTEREST**
   In return for amounts to be advanced by Lender to or for the benefit of Borrower, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated **May 22, 2014** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on **July 19, 2097**. Interest will be charged on unpaid principal at the rate of **TWO AND 274/1000** percent **(2.274%)** per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

3. **PROMISE TO PAY SECURED**
   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**
   (A) **Time**
       Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment-in-full, as provided in Paragraph 7 of this Note.

   (B) **Place**
       Payment shall be made at:  **Liberty Home Equity Solutions, Inc., 10951 White Rock Road, Suite 200, Rancho Cordova, CA 95670**   or any such other place, as Lender may designate in writing by notice to Borrower.

   (C) **Limitation of Liability**
       Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

5. **INTEREST RATE CHANGES**
   (A) **Change Date**
       The interest rate may change on the first day of **July, 2014,** and on [ ] that day of each succeeding year [X] the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

   (B) **The Index**
       Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the average of interbank offered rates for one month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* on the first business day of each week, which is Monday, or Tuesday if Monday is a non-publishing day. Any particular Index is valid until a new Index is published the following Monday, or Tuesday if Monday is a non-publishing day. "Current Index" means the most recent Index figure that is valid 30 days before the Change Date, rounded to three digits to the right of the decimal point. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

   (C) **Calculation of Interest Rate Changes**
       Before each Change Date, Lender will calculate a new interest rate by adding a margin of   **TWO AND 125/1000** percentage points **(2.125%)** to the current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

   (D) **Limits on Interest Rate Changes**
       [ ] The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the

FHA Case No.
Loan No
MIN:

initial interest rate stated in Paragraph 2 of this Note.
[X] The interest rate will never increase above **TWELVE AND 274/1000 percent (12.274%).**

**(E) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**
A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

*First,* to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

*Second,* to that portion of the principal balance representing aggregate payments for servicing fees;

*Third,* to that portion of the principal balance representing accrued interest due under the Note; and

*Fourth,* to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT-IN-FULL**
**(A) Death or Sale**
Lender may require immediate payment-in-full of all outstanding principal and accrued interest if:

(i)     A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii)    A Borrower conveys all of his or her title to the Property and no other Borrower retains title to the Property in fee simple or on a leasehold interest as set forth in 24 CFR 206.45(a).

**(B) Other Grounds**
Lender may require immediate payment-in-full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i)     The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii)    For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii)   An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**
If Lender has required immediate payment-in-full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8. WAIVERS**

FHA Case No.

Loan No

MIN:

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9.    GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at an different address if Borrower is given a notice of that different address.

**10.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11.   RELATIONSHIP TO SECOND NOTE**
   **(A)    Second Note**
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

   **(B)    Relationship of Secretary Payments to this Note**
Payments made by the Secretary shall not be included in the debt due under this Note unless:

   (i)     This Note is assigned to the Secretary; or

   (ii)    The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

   **(C)    Effect on Borrower**
Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

   (i)     Be required to pay amounts owed under this Note until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

   (ii)    Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

**12.   SHARED APPRECIATION (If Applicable)**
If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)        _____ (Seal)
Borrower - Allan H Rell                 Borrower - Phyllis Y Rell

Origination Company: **Liberty Home Equity Solutions, Inc.**
   NMLSR ID:
Originator: **Westhead, Walter**
   NMLSR ID
Lender: **Liberty Home Equity Solutions, Inc.**
   NMLSR ID

## DIRECT ENDORSEMENT ALLONGE

For purposes of further endorsement of the following described note, this Allonge is affixed and becomes a permanent part of said note this **22nd** day of **May, 2014**.

LOAN #: ███████

SERV #: █████████████

Borrower(s): **Allan H Rell, Phyllis Y Rell**

Property Address: **537 W RICHARDSON AVE, LANGHORNE, PA 19047**

Principal Balance: **$ 382,500.00**

Loan Date: **May 22, 2014**

### PAY TO THE ORDER OF

_____

### WITHOUT RECOURSE

Company Name:    **Liberty Home Equity Solutions, Inc.**

_(Signature)_

By: _____
(Name) Kelly Smith, Assignment Agent

_____
(Title)

██████████████████

Accenture Mortgage Cadence Document Center © 9247 04/12

**EXHIBIT "B"**

## BUCKS COUNTY RECORDER OF DEEDS
### 55 East Court Street
### Doylestown, Pennsylvania 18901

Instrument Number - 2014027793
Recorded On 6/4/2014 At 12 51 27 PM          * Total Pages - 14
* Instrument Type - MORTGAGE - CORPORATIONS
  Invoice Number - ▮▮▮▮▮▮          User - SMC
* Mortgagor - RELL, ALLAN H
* Mortgagee - LIBERTY HOME EQUITY SOLUTIONS INC
* Customer - SIMPLIFILE LC E-RECORDING
* **FEES**

| | |
|---|---|
| RECORDING FEES | $101 00 |
| TOTAL PAID | $101 00 |

Bucks County UPI Certification
On June 4, 2014 By TF

This is a certification page

# DO NOT DETACH

This page is now part
of this legal document.

RETURN DOCUMENT TO
NATIONAL CLOSING SOLUTIONS
5814 LONETREE BLVD
ROCKLIN, CA 95765

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania

Joseph J Szafran, Jr
Recorder of Deeds

\* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page

ORIGINAL

After Recording Return To
**Liberty Home Equity Solutions, Inc**
**10951 White Rock Road, Suite 200**
**Rancho Cordova, CA 95670**

This document is now recorded
electronically with the county
recorder. Attached is a copy of
the recorder stamp as it appears
of record.

NATIONAL CLOSING SOLUTIONS
RECORDING DEPT

Prepared By Andrea Driver
**Liberty Home Equity Solutions, Inc**
**10951 White Rock Road, Suite 200**
**Rancho Cordova, CA 95670**

_____ ace Above This Line For Recording Data _____

**Commonwealth of Pennsylvania**
Parcel ID Numb

# ADJUSTABLE RATE OPEN-END
# HOME EQUITY CONVERSION MORTGAGE
## THIS MORTGAGE ("SECURITY INSTRUMENT") SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument") is given on **May 22, 2014** ("Date") The mortgagor is **Allan H Rell and Phyllis Y Rell, his wife, as tenants by the entireties** whose address is **537 W RICHARDSON AVE, LANGHORNE, PA 19047** ("Borrower") **The mortgagee under this Security Instrument is Mortgage Electronic Registration Systems, Inc ('MERS')** MERS is a separate corporation that is acting solely as nominee for Lender, and Lender's successors and assigns MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 1901 E Voorhees Street, Suite C, Danville, IL 61834 or P O Box 2026, Flint, MI 48501-2026, tel This Security Instrument is given to **Liberty Home Equity Solutions, Inc** which is organized and existing under the laws of **THE STATE OF CALIFORNIA**, and whose address is **10951 White Rock Road, Suite 200, Rancho Cordova, CA 95670** ("Lender") Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement") The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note") This Security Instrument secures to Lender (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **THREE HUNDRED EIGHTY TWO THOUSAND FIVE HUNDRED AND NO/100 (U S $382,500 00)**, (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(1 of 12)

under the terms of this Security Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in **Bucks** County, Pennsylvania

**Legal description attached hereto as Exhibit A and by this reference made a part hereof**

which has the address of   **537 W RICHARDSON AVE, LANGHORNE, PA 19047** ("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

1    **Payment of Principal and Interest**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note

2    **Payment of Property Charges**  Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement

3    **Fire, Flood and Other Hazard Insurance**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire  This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary")  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary  All insurance shall be carried with companies approved by Lender  The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to,

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(2 of 12)

Lender

In the event of loss, Borrower shall give Lender immediate notice by mail  Lender may make proof of loss if not made promptly by Borrower  Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly  Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument  Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser

4    **Occupancy, Preservation, Maintenance and Protection of the Property, Borrower's Loan Application, Leaseholds**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument  "Principal residence" shall have the same meaning as in the Loan Agreement

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing

5    **Charges to Borrower and Protection of Lender's Rights in the Property**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2  Borrower shall pay these obligations on time directly to the entity which is owed the payment  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments  Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c)

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender or MERS may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property,

including payment of taxes, hazard insurance and other items mentioned in Paragraph 2

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument

6    **Inspection** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower

7    **Condemnation** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

8    **Fees** Lender may collect fees and charges authorized by the Secretary

9    **Grounds for Acceleration of Debt**

   (a)   **Due and Payable** Lender may require immediate payment-in-full of all sums secured by this Security Instrument if

      (i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

      (ii)   All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate, (or retaining a beneficial interest in a trust with such an interest in the Property)

   (b)   **Due and Payable with Secretary Approval** Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if

      (i)    The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower, or

(ii)    For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower, or

(iii)    An obligation of the Borrower under this Security Instrument is not performed

(c)    **Notice to Lender** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 (a)(ii) and (b) occur

(d)    **Notice to Secretary and Borrower** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii) and (b) Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either

(i)    Correct the matter which resulted in the Security Instrument coming due and payable, or

(ii)    Pay the balance in full, or

(iii)    Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance, or

(iv)    Provide the Lender with a deed-in-lieu of foreclosure

(e)    **Trusts** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9 A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9

(f)    **Mortgage Not Insured** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment-in-full of all sums secured by this Security Instrument A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary

10    **No Deficiency Judgments** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument Lender may enforce the debt only through sale of the Property Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment

11    **Reinstatement** Borrower has a right to be reinstated if Lender has required immediate



Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END/MERS
(5 of 12)

payment-in-full  This right applies even after foreclosure proceedings are instituted  To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full  Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full  However, Lender is not required to permit reinstatement if  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument

**12    Lien Status**

    **(a)    Modification**  Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a)  If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense  If the title evidence indicates that the property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances  Borrower agrees to execute such documents  If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument

    **(b)    Tax Deferral Programs**  Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument

    **(c)    Prior Liens**  Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Borrower shall satisfy the lien or take one more of the actions set forth above within 10 days of the giving of notice

**13    Relationship to Second Security Instrument**



Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(8 of 12)

**(a)** **Second Security Instrument** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property

**(b)** **Relationship of First and Second Security Instruments** Payments made by the Secretary shall not be included in the debt under the Note unless

    (i)    This Security Instrument is assigned to the Secretary, or

    (ii)    The Secretary accepts reimbursement by the Lender for all payments made by the Secretary

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note

**(c)** **Effect on Borrower** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not

    (i)    Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note, or

    (ii)    Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note

**(d)** **No Duty of the Secretary** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13

**14** **Forbearance by Lender Not a Waiver** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

**15** **Successors and Assigns Bound, Joint and Several Liability** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender  Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary  Borrower's covenants and agreements shall be joint and several

**16** **Notices** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method  The notice shall be directed to the Property Address or any other address all Borrowers jointly designate  Any

notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16

17  **Governing Law, Severability** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision To this end the provisions of this Security Instrument and the Note are declared to be severable

18  **Borrower's Copy** Borrower shall be given one conformed copy of the Note and this Security Instrument

NON-UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

19  **Assignment of Rents** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower This assignment of rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of breach to Borrower (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument, (b) Lender shall be entitled to collect and receive all of the rents of the Property, and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower However, Lender or a judicially appointed receiver may do so at any time there is a breach Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full

20  **Foreclosure Procedure If Lender requires immediate payment in full under Paragraph 9, Lender at its option may foreclose this Security Instrument by judicial proceeding Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law**

21  **Lien Priority** The full amount secured by this Security Instrument shall have the same priority over

any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made , regardless of the actual date of any disbursement  The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose  This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes

22  **Adjustable Rate Feature**  Under the Note, the initial stated interest rate of **2 274%** which accrues on the principal balance ("Initial Interest Rate") is subject to change, as described below  When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance  Each adjustment to the interest rate will be based upon the interbank offered rates for one month U S dollar-denominated deposits in the London market ("LIBOR"), as published on the first business day of each week in the "Money Rates" section of *The Wall Street Journal*("Index") plus a margin  If the Index is no longer available, Lender will use as a new Index any Index prescribed by the Secretary  Lender will give Borrower notice of the new Index

Lender will perform the calculations described below to determine the new adjusted interest rate  The interest rate may change on the first day of **July, 2014**, and on [ ] that day of each succeeding year **[X]** the first day of each succeeding month ("Change Date") until the loan is paid in full

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index")  Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index  The sum of the margin plus the Current Index will be called the ("Calculated Interest Rate") for each Change Date  The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date ("the Existing Interest Rate")

**[ ] Annually Adjusting Variable Rate Feature** The Calculated Interest Rate cannot be more than 2 0% higher or lower than the Existing Interest Rate, nor can it be more than 5 0% higher or lower than the Initial Interest Rate

**[X] Monthly Adjusting Variable Rate Feature** The Calculated Interest Rate will never increase above **TWELVE AND 274/1000 Percent (12 274 %)**

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date  At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change

23  **Release**  Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void  After such occurrence, Lender shall discharge and satisfy this Security Instrument  Borrower shall pay any recordation costs  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law

24  **Waivers**  Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any



Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS (9 of 12)

present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption

25  **Reinstatement Period** Borrower's time to reinstate provided in Paragraphs 9 and 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument

26  **Interest Rate After Judgment** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note

27  **Riders to this Security Instrument** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument  [Check applicable box(es) ]

[ ]  Condominium Rider        [ ]  Planned Unit Development Rider
[ ]  Shared Appreciation Rider    [ ]  Other [Specify]

28  **Nominee Capacity of MERS**   MERS serves as mortgagee of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein   All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Mortgagee herein shall be made by Lender   MERS shall at all times comply with the instructions of Lender and its successors and assigns   If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Mortgage   Subject to the foregoing, all references herein to "Mortgagee" shall include Lender and its successors and assigns

**Notice to borrower  this document contains provisions for a variable interest rate**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it

_____ (Seal)     _____ (Seal)
Borrower - **Allan H Rell**                Borrower - **Phyllis Y Rell**

Pennsylvania Mortgage HECM ADJUSTABLE RATE OPEN-END - MERS
(10 of 12)

Space Below This Line for Acknowledgement

COMMONWEALTH OF PENNSYLVANIA, _Bucks_ County ss

On this, the 22 day of _May_ ,20 14 , before me, the undersigned officer,

personally appeared _Allan H Rell + Phyllis Y Rell_

satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the written
instrument and acknowledged that he/she/they executed the same for the purpose herein contained

IN WITNESS WHEREOF, I hereunto set my hand and official seal

My commission expires _4/7/2015_

Commonwealth of Pennsylvania
**NOTARIAL SEAL**
SUSAN F O'CONNELL, NOTARY PUBLIC
Philadelphia, Philadelphia County
My Commission Expires April 7 2015

Signature of Notary _Notary Public_

Title of Officer

Origination Company **Liberty Home Equity Solutions, Inc**

Originator **Westhead, Walter**

Lender **Liberty Home Equity Solutions, Inc**



[redacted]

Commonwealth of Pennsylvania
NOTARIAL SEAL
SUSAN F O'CONNELL NOTARY PUBLIC
Philadelphia Phil delphia County
My Commission Expires April 7 2015

**CERTIFICATE OF RESIDENCE**

I, Shanna Jackson

Agent of Lender

do hereby certify that the precise address of the within-named lender is

**Liberty Home Equity Solutions, Inc**
**10951 White Rock Road, Suite 200**
**Rancho Cordova, CA 95670**

Witness my hand this 28th day of May 2014

Signature of Agent of Lender

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

The land described herein is situated in the state of Pennsylvania, county of Bucks, described as follows

All that certain lot or piece of ground with the buildings and improvements erected thereon, situate in the Township of Middletown County of Bucks and State of Pennsylvania being known as Lot No 6 on a plan of lots known as 'Rumsey Tract No 1" made Ezra Golub, registered engineer, dated July 23, 1956 which plat is recorded in the office of the recording of deeds at Doylestown, Pennsylvania, in plan book no 13, page 4 as follows

Beginning at a point on the Northwesterly side of Richardson Avenue (33 feet wide on said plan) which is at the dividing line between Lot No 6 and Lot No 7 on said plan, from said point of beginning running thereon South seventy-seven degrees seventeen minutes west along the Northwesterly side of Richardson Avenue eighty and fifteen one-hundredths feet to a point, a corner of Lot 5 on said plan, which point is measured North seventy-seven degrees seventeen minutes east forty-one and ninety one-hundredths feet more or less from an angle point along the Northwesterly side of Richardson Avenue which point is measured seventy-nine degrees twenty-four minutes east forty feet from the Southeast corner of lands now or late of I C Mitton, thence North twelve degrees forty minutes west along line of Lot 5 on said plan, two hundred one and twelve one-hundredths feet more or less to a point in the line of Lot No 1 on said plan, thence North seventy-seven degrees thirty minutes East along parts of Lot No 1 and Lot No 2 on said plan eighty feet to a point, a corner and Lot No 7 on said plan, thence South twelve degrees forty minutes east along Lot No 7 on said plan two hundred and eighty-four one-hundredths feet more or less to a point on the Northwesterly side of Richardson Avenue, the point and place of beginning

**EXHIBIT "C"**

## BUCKS COUNTY RECORDER OF DEEDS

**55 East Court Street**
**Doylestown, Pennsylvania   18901**
**(215) 348-6209**

**Instrument Number - 2019017141**
**Recorded On 4/11/2019 At 8:06:12 AM**                    **\* Total Pages - 4**
**\* Instrument Type - MORTGAGE ASSIGNMENT**
**Invoice Number -** ▮▮▮▮▮          **User - TLF**
**\* Mortgagor - LIBERTY HOME EQUITY SOLUTIONS INC**
**\* Mortgagee - OCWEN LOAN SERVICING LLC**
**\* Customer - CHARLES A BROWN AND ASSOC DBA DOCSOLUTION**
**\* FEES**

| | |
|---|---|
| RECORDING FEES | $71.75 |
| TOTAL PAID | $71.75 |

> Bucks County UPI Certification
> On April 11, 2019 By TF

> This is a certification page
>
> DO NOT DETACH
>
> This page is now part
> of this legal document.

**RETURN DOCUMENT TO:**
CHARLES A BROWN AND ASSOC DBA
DOCSOLUTION

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Robin M. Robinson
Recorder of Deeds

**\* - Information denoted by an asterisk may change during**
**the verification process and may not be reflected on this page.**

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
                            MIDDLETOWN TWP
        CERTIFIED 04/11/2019 BY TF
```

Prepared by, Recording Requested By and Return to:
DOC SOLUTIONS
ATTN: REGINA MONTS/LORI LOWE
2316 SOUTHMORE AVENUE
PASADENA, TX 77502

Client Id: ███████
Loan #: ███████

# ASSIGNMENT OF MORTGAGE

Min: ███████        MERS Phone: 1-888-679-6377

**FOR VALUE RECEIVED**, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** whose address is P.O. Box 2026, Flint, MI 48501-2026 and whose physical address is 1901 E Voorhees St, Ste C, Danville, IL 61834, **AS NOMINEE FOR LIBERTY HOME EQUITY SOLUTIONS, INC, ITS SUCCESSORS AND ASSIGNS**, does hereby assign and transfer to **OCWEN LOAN SERVICING, LLC, ITS SUCCESSORS AND ASSIGNS**, forever and without recourse, whose address is 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, all its right, title and interest in and to a certain Mortgage from **ALLAN H RELL AND PHYLLIS Y RELL, HIS WIFE, AS TENANTS BY THE ENTIRETIES** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LIBERTY HOME EQUITY SOLUTIONS, INC., ITS SUCCESSORS AND ASSIGNS** for **$382,500.00**, dated **5/22/2014** of record on **6/4/2014** as Document **2014027793**, in the **BUCKS County** Clerk's Office, State of **PENNSYLVANIA**.

Property Address: 537 W RICHARDSON AVE, LANGHORNE, PENNSYLVANIA 19047
Legal description: SEE ATTACHMENT
Parcel: ███████

I certify that the address of the within named assignee is 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402.

*Amy McCain*

Executed this *February 27, 2019*

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LIBERTY HOME
EQUITY SOLUTIONS, INC, ITS SUCCESSORS AND ASSIGNS**

By: AMY MCCAIN

Title: ASSISTANT SECRETARY


STATE OF MICHIGAN

COUNTY OF CLINTON

Before me, the undersigned officer, on this day, personally appeared AMY MCCAIN the ASSISTANT
SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE
FOR LIBERTY HOME EQUITY SOLUTIONS, INC, ITS SUCCESSORS AND ASSIGNS known to me
to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that
he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this 27 Feb 2019

Notary Public in and for the State of Michigan
Notary's Printed Name: Kristina M. Mireles
My Commission Expires: 9-11-2021
Mortgage for $382,500.00 dated 5/22/2014

KRISTINA M. MIRELES
Notary Public
County of Ingham
My Commission Expires
September 11, 2021
Acting in the County of
Clinton
STATE OF MICHIGAN

Order Number ████████

## EXHIBIT "A"
## LEGAL DESCRIPTION

The land described herein is situated in the state of Pennsylvania, county of Bucks, described as follows

All that certain lot or piece of ground with the buildings and improvements erected thereon, situate in the Township of Middletown County of Bucks and State of Pennsylvania being known as Lot No 6 on a plan of lots known as 'Rumsey Tract No 1" made Ezra Golub, registered engineer, dated July 23, 1956 which plat is recorded in the office of the recording of deeds at Doylestown, Pennsylvania, in plan book no 13, page 4 as follows

Beginning at a point on the Northwesterly side of Richardson Avenue (33 feet wide on said plan) which is at the dividing line between Lot No 6 and Lot No 7 on said plan, from said point of beginning running thereon South seventy-seven degrees seventeen minutes west along the Northwesterly side of Richardson Avenue eighty and fifteen one-hundredths feet to a point, a corner of Lot 5 on said plan, which point is measured North seventy-seven minutes seventeen minutes east forty-one and ninety one-hundredths feet more or less from an angle point along the Northwesterly side of Richardson Avenue which point is measured seventy-nine degrees twenty-four minutes east forty feet from the Southeast corner of lands now or late of I C Mitton, thence North twelve degrees forty minutes west along line of Lot 5 on said plan, two hundred one and twelve one-hundredths feet more or less to a point in the line of Lot No 1 on said plan, thence North seventy-seven degrees thirty minutes East along parts of Lot No 1 and Lot No 2 on said plan eighty feet to a point, a corner and Lot No 7 on said plan, thence South twelve degrees forty minutes east along Lot No 7 on said plan two hundred and eighty-four one-hundredths feet more or less to a point on the Northwesterly side of Richardson Avenue, the point and place of beginning

APN ████████

FILED

MAY 31 2019

STATE TREASURER

# CERTIFICATE OF MERGER

## OF

## OCWEN LOAN SERVICING, LLC
### (a Delaware limited liability company)

## WITH AND INTO

## PHH MORTGAGE CORPORATION
### (a New Jersey corporation)

Pursuant to Section 14A of the New Jersey Business Corporation Act, the domestic business corporation and the other business entity hereinafter named do hereby submit the following Certificate of Merger.

1. The names of the parties to the merger herein certified (the "*Merger*") are PHH Mortgage Corporation, a corporation organized and existing under the laws of the State of New Jersey (the "*Company*"), and Ocwen Loan Servicing, LLC, a limited liability company formed and existing under the laws of the State of Delaware (the "*Merging Entity*").

2. Annexed hereto and made a part hereof is the Agreement and Plan of Merger, dated May 2, 2019, between the Company and the Merging Entity for merging the Merging Entity with and into the Company, with the Company as the surviving corporation, as approved by the Board of Directors and the sole shareholder of the Company and the Board of Managers of the Merging Entity.

3. The name of the surviving corporation shall be PHH Mortgage Corporation.

4. The Certificate of Incorporation of the Company, which is the surviving corporation, shall continue in full force and effect as the Certificate of Incorporation of the surviving corporation.

5. The number of shares of the Company entitled to vote at the time of the approval of the Agreement and Plan of Merger by its sole shareholder was 1,000, all of which were of one class. On May 1, 2019, the Company's sole shareholder approved the Agreement and Plan of Merger pursuant to a written consent.

6. On February 11, 2019, the Board of Managers of the Merging Entity approved the Agreement and Plan of Merger pursuant to a written consent.

7. The applicable provisions of the laws of the jurisdiction of formation of the Merging Entity relating to the merger of the Merging Entity with and into the Company will have been complied with upon compliance with any of the filing and recording requirements thereof.

8.      The Company will continue its existence as the surviving corporation under its present name pursuant to the provisions of the laws of its jurisdiction of organization.

9.      The effective date of the merger herein provided for in the State of New Jersey shall be 12:01 a.m. Eastern Time on June 1, 2019.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, the undersigned have executed and acknowledged this Certificate of Merger as of May __30_, 2019.

**OCWEN LOAN SERVICING, LLC**

By: _____

Name:  Arthur C. Walker, Jr.

Title:   Senior Vice President


**PHH MORTGAGE CORPORATION**

By: _____

Name:  Alberino Celini

Title:   Vice President


*[ Signature Page to Certificate of Merger – Owen Loan Servicing, LLC ]*

## Annex A

### Agreement and Plan of Merger

[See attached.]

*Execution Version*

## AGREEMENT AND PLAN OF MERGER

THIS AGREEMENT AND PLAN OF MERGER (the *"Merger Agreement"*) is entered into as of May 2, 2019 by and between Ocwen Loan Servicing, LLC, a Delaware limited liability company (*"OLS"*), and PHH Mortgage Corporation, a New Jersey corporation (*"PMC"*). OLS and PMC are collectively referred to herein as the *"Parties"* and each, individually, as a *"Party."*

### WITNESSETH:

WHEREAS, OLS is a limited liability company duly organized and existing under the laws of the State of Delaware;

WHEREAS, PMC is a corporation duly organized and existing under the laws of the State of New Jersey;

WHEREAS, the Board of Managers of OLS and the Board of Directors of PMC have each determined that it is advisable and in the best interests of said entities and their respective member and stockholder that OLS merge with and into PMC, with PMC as the surviving entity (the *"Merger"*), upon the terms and conditions of this Merger Agreement; and

WHEREAS, the Parties have both adopted the OMS-PMC Plan of Reorganization and intend for this Merger to occur pursuant to the overall Transactions laid out in the OMS-PMC Plan of Reorganization, that, when taken together, are intended to be and will be treated as a tax-free reorganization under section 368(a)(1) of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

NOW, THEREFORE, BE IT RESOLVED, in consideration of the mutual agreements and covenants set forth herein, OLS and PMC hereby agree as follows:

1.    Authorization. The execution and delivery of this Merger Agreement by OLS and the consummation by OLS of the transactions contemplated hereby have been authorized and approved by the Board of Managers of OLS, and the execution and delivery of this Merger Agreement by PMC and the consummation by PMC of the transactions contemplated hereby have been authorized and approved by each of the Board of Directors of PMC and by the sole stockholder of PMC.

2.    The Merger. The effective time (the *"Effective Time"*) of the Merger shall be the later of (A) 12:01 a.m. Eastern Time on June 1, 2019, or (B) upon the filing of the applicable Certificate of Merger with the Secretary of State of the State of Delaware and the applicable Certificate of Merger with the New Jersey Division of Revenue. At the Effective Time, OLS shall, pursuant to the New Jersey Business Corporation Act and the Delaware Limited Liability Company Act, be merged with and into PMC and PMC shall be the surviving corporation (and shall sometimes hereinafter be referred to as the "surviving corporation") and shall continue to exist as said surviving corporation under its present name pursuant to the provisions of the New Jersey Business Corporation Act. From and after the Effective Time, all real and personal property, tangible and intangible, of every kind and description, and all the rights, privileges, immunities, powers, purposes, franchises, licenses and authority of OLS shall vest in PMC as the surviving corporation, and all debts, liabilities, obligations, restrictions and duties of OLS shall become the debts, liabilities, obligations, restrictions and duties of PMC as the surviving corporation. Neither the rights of creditors nor any liens upon, or security interests in, the property of either PMC or OLS shall be impaired by the Merger. The separate existence of OLS shall cease at the Effective Time in accordance with the laws of the State of Delaware.

3.      Governing Documents.

(a)      Certificate of Incorporation.  The Certificate of Incorporation of PMC as in force and effect at the Effective Time shall be the Certificate of Incorporation of the surviving corporation and shall continue in full force and effect until amended in the manner prescribed therein or by the New Jersey Business Corporation Act.

(b)      Bylaws.  The Bylaws of PMC as in force and effect at the Effective Time shall be the Bylaws of the surviving corporation and shall continue in full force and effect until amended in the manner prescribed therein or by the New Jersey Business Corporation Act.

4.      Directors and Officers.   The directors and officers of the surviving corporation in office at the Effective Time shall be the members of the first Board of Directors and the first officers of the surviving corporation, all of whom shall hold their directorships and offices until the election and qualification of their respective successors or until their tenure is otherwise terminated in accordance with the bylaws of the surviving corporation

5.      OLS Membership Interests.  The outstanding and existing limited liability company interests in OLS shall, at the Effective Time, be cancelled and retired and cease to exist, and no consideration shall be delivered in exchange therefor.

6.      PMC Shares.  The issued and outstanding shares of capital stock of PMC shall not be converted or exchanged in any manner, or be entitled to the payment or delivery of any consideration in exchange therefor, but each said share which is issued and outstanding as of the Effective Time shall continue to represent one issued and outstanding share of the surviving corporation.

7.      Miscellaneous.

(a)      Assignment; Binding Effect.  This Merger Agreement and the rights and obligations of the Parties hereunder may not be assigned by either Party without the prior written consent of the other Party hereto. This Merger Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors, heirs, executors, administrators, legal representatives and assigns.

(b)      Amendment; Waiver.  Prior to the Effective Time, any amendment hereto shall be effective only if signed by all Parties hereto. No waiver of any provisions of this Merger Agreement shall be valid unless in writing and signed by the party against whom enforcement is sought.

(c)      Governing Law.  This Merger Agreement, the rights and obligations of the Parties hereto, and any claims or disputes relating thereto, shall be governed by and construed in accordance with the laws of the State of New Jersey, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

(d)      Tax-Treatment.  In accordance with the OMS-PMC Plan of Reorganization, the Parties hereby agree that the Merger is intended to be and will be treated as by both Parties as a tax-free reorganization under section 368(a)(1) of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

(e)      Severability.  In the event that any provision of this Merger Agreement shall be invalid or unenforceable in any respect, such provision shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining provisions of this Agreement.

(f)      Further Assurances.  The Board of Managers and proper officers of OLS and the Board of Directors and proper officers of PMC are hereby authorized, empowered, and directed to do any and all acts and things, and to make, execute, deliver, file and/or record any and all instruments, papers, and documents which shall be or become necessary, proper, or convenient to carry out or put into effect any of the provisions of this Merger Agreement or of the Merger herein provided for.

(g)      Counterparts.  This Merger Agreement may be executed by the Parties hereto in counterparts (including by facsimile or PDF), each of which when so executed and delivered will be deemed an original and all of which shall constitute one and the same instrument.  Signatures delivered by facsimile or other electronic transmission (such as e-mail in PDF format) shall have the same force and effect as manual signatures delivered in person.

(h)      Recordkeeping.  PMC shall maintain this Merger Agreement on file at the its principal place of business.  PMC shall furnish a copy of this Merger Agreement, on request and without cost, to any member of OLS in accordance with the Delaware Limited Liability Company Act.

(i)      Termination.  This Merger Agreement may be terminated and the Merger may be abandoned at any time prior to the Effective Time by action of either party hereto.  If this Merger Agreement is terminated pursuant to this Section 7(i), this Agreement shall become void and of no effect with no liability on the part of either Party hereto.

*[Signature Page Follows]*

3

IN WITNESS WHEREOF, the Parties have executed this Merger Agreement as of the date first above written.

OCWEN LOAN SERVICING, LLC,
a Delaware limited liability company

By: _____

Name:    Arthur C. Walker, Jr.

Title:    Senior Vice President

Signed in: St. Croix, USVI

PHH MORTGAGE CORPORATION,
a New Jersey corporation

By: _____

Name:    Leah E. Hutton

Title:    Assistant Secretary

Signed in: St. Croix, USVI

*Execution Version*

## AMENDMENT AGREEMENT TO "AGREEMENT AND PLAN OF MERGER"

THIS AMENDMENT AGREEMENT (the "*Amendment Agreement*") is entered into as of May 29, 2019 by and between Ocwen Loan Servicing, LLC, a Delaware limited liability company ("*OLS*"), and PHH Mortgage Corporation, a New Jersey corporation ("*PMC*"). OLS and PMC are collectively referred to herein as the "*Parties*" and each, individually, as a "*Party*."

### WITNESSETH:

WHEREAS, OLS and PMC have previously entered into an Agreement and Plan of Merger dated May 2, 2019 to be effective the later of (A) 12:01 a.m. Eastern Time on June 1, 2019, or (B) upon the filing of the applicable Certificate of Merger with the Secretary of State of the State of Delaware and the applicable Certificate of Merger with the New Jersey Division of Revenue;

WHEREAS, the Parties have both adopted the OMS-PMC Plan of Reorganization and intend for this Merger to occur pursuant to the overall Transactions laid out in the OMS-PMC Plan of Reorganization, that, when taken together, are intended to be and will be treated as a tax-free reorganization under section 368(a)(1) of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder; and

WHEREAS, OLS and PMC have each determined that it is advisable and in the best interests of said entities that the following the terms and conditions of be included in the Merger Agreement.

NOW, THEREFORE, BE IT RESOLVED, in consideration of the mutual agreements and covenants set forth herein, OLS and PMC hereby agree to add the following terms to section 7 of the May 2, 2019 Agreement and Plan of Merger as follows:

(j) <u>Title Passage</u>. Title to all assets and liabilities transferred in this Agreement, whether directly or indirectly, shall be deemed and treated by both parties to pass in the United States Virgin Islands.

(k) <u>US Tax Treatment and Timing of Deemed Shares</u>. The Agreement does not contemplate any actual transfer of stock between the Parties, but shares may be deemed to be issued for U. S. Federal income tax purposes. For the avoidance of any doubt, both parties agree and will treat any shares that are deemed to be issued to be distributed and/or contributed (in any additional deemed transactions) as of the Effective Time (as defined herein) to result in the deemed ownership of shares to be consistent with actual ownership as of the Effective Time.

FURTHER RESOLVED, all other terms of the Merger Agreement, including the Effective Time, are hereby expressly affirmed.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties have executed this Amendment Agreement as of the date first above written.

OCWEN LOAN SERVICING, LLC,

a Delaware limited liability company

By: _____

Name:    Arthur C. Walker, Jr.

Title:    Senior Vice President

Signed in: _____

PHH MORTGAGE CORPORATION,

a New Jersey corporation

By: _____

Name:    John P. Kim

Title:    Vice President, Capital Markets

Signed in: _____

# EXHIBIT "D"

**L.B.F. 3015.1**

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: **Allan Rell**
      **Phyllis Y Rell**

Case No.: ___19-11124___

Chapter 13

Debtor(s)

## Chapter 13 Plan

☐ Original

☑ _____ Amended

Date: **July 9, 2019**

### THE DEBTOR HAS FILED FOR RELIEF UNDER
### CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS WILL BE AFFECTED

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

### IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU
### MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE
### NOTICE OF MEETING OF CREDITORS.

**Part 1: Bankruptcy Rule 3015.1 Disclosures**

☐  Plan contains nonstandard or additional provisions – see Part 9

☐  Plan limits the amount of secured claim(s) based on value of collateral – see Part 4

☐  Plan avoids a security interest or lien – see Part 4 and/or Part 9

**Part 2: Plan Payment, Length and Distribution – PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE**

**§ 2(a)(1) Initial Plan:**
  **Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee")
  Debtor shall pay the Trustee  for **60** months; and
  Debtor shall pay the Trustee $_____ per month for _____ months.
  ☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(a)(2) Amended Plan:**
  **Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee") $7,750.00
  The Plan payments by Debtor shall consists of the total amount previously paid ($750.00)
added to the new monthly Plan payments in the amount of $**125.00** beginning July 23rd, 2019 and continuing for ___**56**___ months.
  ☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b)** Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):

**§ 2(c) Alternative treatment of secured claims:**
  ☑ **None.** If "None" is checked, the rest of § 2(c) need not be completed.

  ☐ **Sale of real property**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

See § 7(c) below for detailed description

☐ **Loan modification with respect to mortgage encumbering property:**
See § 4(f) below for detailed description

**§ 2(d) Other information that may be important relating to the payment and length of Plan:**

**§ 2(e) Estimated Distribution**

| | | | |
|---|---|---|---|
| A. | Total Priority Claims (Part 3) | | |
| | 1. Unpaid attorney's fees | $ | **2,255.00** |
| | 2. Unpaid attorney's cost | $ | **0.00** |
| | 3. Other priority claims (e.g., priority taxes) | $ | **0.00** |
| B. | Total distribution to cure defaults (§ 4(b)) | $ | **0.00** |
| C. | Total distribution on secured claims (§§ 4(c) &(d)) | $ | **0.00** |
| D. | Total distribution on unsecured claims (Part 5) | $ | **4,500.00** |
| | Subtotal | $ | **6,755.00** |
| E. | Estimated Trustee's Commission | $ | **10%** |
| F. | Base Amount | $ | **7,505.55** |

## Part 3: Priority Claims (Including Administrative Expenses & Debtor's Counsel Fees)

**§ 3(a) Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise:**

| Creditor | Type of Priority | Estimated Amount to be Paid |
|---|---|---|
| **Brad J. Sadek** | **Legal Fees** | **$2,255.00** |

**§ 3(b) Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.**

☑ **None.** If "None" is checked, the rest of § 3(b) need not be completed or reproduced.

## Part 4: Secured Claims

**§ 4(a) ) Secured claims not provided for by the Plan**

☐

| Creditor | Secured Property |
|---|---|
| Ξ If checked, debtor will pay the creditor(s) listed below directly in accordance with the contract terms or otherwise by agreement. **Liberty Home Equity Solutions, LLC** | **RE** |

**§ 4(b) Curing Default and Maintaining Payments**

☑ **None.** If "None" is checked, the rest of § 4(b) need not be completed or reproduced.

2

**§ 4(c) Allowed Secured Claims to be paid in full: based on proof of claim or pre-confirmation determination of the amount, extent or validity of the claim**

☐     **None.** If "None" is checked, the rest of § 4(c) need not be completed.

       (1) Allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

       (2) If necessary, a motion, objection and/or adversary proceeding, as appropriate, will be filed to determine the amount, extent or validity of the allowed secured claim and the court will make its determination prior to the confirmation hearing.

       (3) Any amounts determined to be allowed unsecured claims will be treated either: (A) as a general unsecured claim under Part 5 of the Plan or (B) as a priority claim under Part 3, as determined by the court.

       (4) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a) (5) (B) (ii) will be paid at the rate and in the amount listed below. *If the claimant included a different interest rate or amount for "present value" interest in its proof of claim or otherwise disputes the amount provided for "present value" interest, the claimant must file an objection to confirmation.\*

       (5) Upon completion of the Plan, payments made under this section satisfy the allowed secured claim and release the corresponding lien.

| Name of Creditor | Description of Secured Property and Address, if real property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Total Amount to be Paid |
|---|---|---|---|---|---|
| | | | | | |

**§ 4(d) Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

☑     **None.** If "None" is checked, the rest of § 4(d) need not be completed.

**§ 4(e) Surrender**

☑     **None.** If "None" is checked, the rest of § 4(e) need not be completed.

**§ 4(f) Loan Modification**

☑ **None.** *If "None" is checked, the rest of § 4(f) need not be completed.*

**Part 5:General Unsecured Claims**

**§ 5(a) Separately classified allowed unsecured non-priority claims**

☑     **None.** If "None" is checked, the rest of § 5(a) need not be completed.

**§ 5(b) Timely filed unsecured non-priority claims**

     (1) Liquidation Test *(check one box)*

          ☑ All Debtor(s) property is claimed as exempt.

          ☐ Debtor(s) has non-exempt property valued at $**4,500.00** for purposes of § 1325(a)(4) and plan provides for distribution of $**6,690.00** to allowed priority and unsecured general creditors.

     (2) **Funding: § 5(b)** claims to be paid as follows *(check one box)*:

          ☑ Pro rata

          ☐ 100%

          ☐ Other (Describe)

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

## Part 6: Executory Contracts & Unexpired Leases

☑ **None.** If "None" is checked, the rest of § 6 need not be completed or reproduced.

## Part 7: Other Provisions

**§ 7(a) General Principles Applicable to The Plan**

(1) Vesting of Property of the Estate *(check one box)*

☑ Upon confirmation

☐ Upon discharge

(2) Subject to Bankruptcy Rule 3012, the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B), (C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made to the Trustee.

(4) If Debtor is successful in obtaining a recovery in personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor or the Trustee and approved by the court..

**§ 7(b) Affirmative duties on holders of claims secured by a security interest in debtor's principal residence**

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

(6) **Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.**

**§ 7(c) Sale of Real Property**

☑ **None**. If "None" is checked, the rest of § 7(c) need not be completed.

(1) Closing for the sale of ___ (the "Real Property") shall be completed within months of the commencement of this bankruptcy case (the "Sale Deadline"). Unless otherwise agreed, each secured creditor will be paid the full amount of their secured claims as reflected in § 4.b (1) of the Plan at the closing ("Closing Date").

(2) The Real Property will be marketed for sale in the following manner and on the following terms:

(3) Confirmation of this Plan shall constitute an order authorizing the Debtor to pay at settlement all customary closing expenses and all liens and encumbrances, including all § 4(b) claims, as may be necessary to convey good and marketable title to the purchaser. However, nothing in this Plan shall preclude the Debtor from seeking court approval of the sale of the property free and clear of liens and encumbrances pursuant to 11

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

U.S.C. § 363(f), either prior to or after confirmation of the Plan, if, in the Debtor's judgment, such approval is necessary or in order to convey insurable title or is otherwise reasonably necessary under the circumstances to implement this Plan.

      (4) Debtor shall provide the Trustee with a copy of the closing settlement sheet within 24 hours of the Closing Date.

      (5) In the event that a sale of the Real Property has not been consummated by the expiration of the Sale Deadline:

## Part 8: Order of Distribution

      **The order of distribution of Plan payments will be as follows:**

      **Level 1**: Trustee Commissions*
      **Level 2**: Domestic Support Obligations
      **Level 3**: Adequate Protection Payments
      **Level 4**: Debtor's attorney's fees
      **Level 5**: Priority claims, pro rata
      **Level 6**: Secured claims, pro rata
      **Level 7**: Specially classified unsecured claims
      **Level 8**: General unsecured claims
      **Level 9**: Untimely filed general unsecured non-priority claims to which debtor has not objected

*\*Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent.*

## Part 9: Nonstandard or Additional Plan Provisions

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

      ☑ **None.** If "None" is checked, the rest of § 9 need not be completed.

## Part 10: Signatures

      By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan.

Date:   **July 9, 2019**                               **/s/ Brad J. Sadek, Esquire**
                                                          **Brad J. Sadek, Esquire**
                                                         Attorney for Debtor(s)

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                   Best Case Bankruptcy

# EXHIBIT "E"

Property Address

537 W RICHARDSON AVE, LANGHORNE, PA 19047

MCA

85.06 %

**Total Amount Due for Reinstatement**    $ 5,238.44

**Reinstatement as of:**    06/15/2023 12:00 AM

<span style="color:red">**\*This amount will change when any new advance is made for taxes, insurance, and/or HOA/COA Dues.**</span>

**Details/Breakdown**

| *Pre D&P Charges* | | |
|---|---|---|
| **Date** | **Type** | **Amount** |
| 01/30/2023 | Disb - Prop Chrg Pre D&P - Hazard Ins | $ 3,133.00 |
| **Total** | | **$ 3,133.00** |

| *Transfer Charges* | | |
|---|---|---|
| **Date** | **Type** | **Amount** |
| 05/31/2023 | Prior Servicer Property Charges | $ 2,105.44 |
| **Total** | | **$ 2,105.44** |



**PHH Mortgage Services**

**Loan Balance History**

Good Through Date  6/15/2023 12:00:00 AM

**Report Description**  Displays all the transactions for the selected loan

**Borrowers Last Name** Rell

**Propery Address**  537 W RICHARDSON AVE, LANGHORNE, PA, 19047
**Investor Name**  PHH Mortgage Services

| Transaction Date | Transaction Description | Principal Amount | Interest | MIP | Service Fee Amount | Corporate Advance Amount | Totals |
|---|---|---|---|---|---|---|---|
| 5/31/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,248.90 | $224.43 | $0.00 | $0.00 | $1,473.33 |
| 4/30/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,205.66 | $222.94 | $0.00 | $0.00 | $1,428.60 |
| 3/31/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,186.22 | $221.47 | $0.00 | $0.00 | $1,407.69 |
| 2/28/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,146.38 | $220.05 | $0.00 | $0.00 | $1,366.43 |
| 2/24/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2/17/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/31/2023 | Monthly Int, M P Accrual & SF | $0.00 | $1,065.73 | $215.56 | $0.00 | $0.00 | $1,281.29 |
| 1/31/2023 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/30/2023 | Disb - Prop Chrg Pre D&P - Hazard Ins | $3,133.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3,133.00 |
| 12/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $1,009.72 | $214.18 | $0.00 | $0.00 | $1,223.90 |
| 11/30/2022 | Monthly Int, M P Accrual & SF | $0.00 | $887.06 | $213.03 | $0.00 | $0.00 | $1,100.09 |
| 10/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $788.43 | $211.99 | $0.00 | $0.00 | $1,000.42 |
| 9/30/2022 | Monthly Int, M P Accrual & SF | $0.00 | $757.34 | $210.98 | $0.00 | $0.00 | $968.32 |
| 8/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $631.66 | $210.10 | $0.00 | $0.00 | $841.76 |
| 7/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $533.71 | $209.33 | $0.00 | $0.00 | $743.04 |
| 6/30/2022 | Monthly Int, M P Accrual & SF | $0.00 | $488.63 | $208.60 | $0.00 | $0.00 | $697.23 |
| 5/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $427.53 | $207.94 | $0.00 | $0.00 | $635.47 |
| 4/30/2022 | Monthly Int, M P Accrual & SF | $0.00 | $390.75 | $207.32 | $0.00 | $0.00 | $598.07 |
| 4/21/2022 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/21/2022 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/21/2022 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4/20/2022 | Corp Adv - S310 - Bnk Attorney Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $369.28 | $206.72 | $0.00 | $0.00 | $576.00 |
| 2/28/2022 | Monthly Int, M P Accrual & SF | $0.00 | $367.06 | $206.12 | $0.00 | $0.00 | $573.18 |
| 2/10/2022 | Corp Adv - S305 - Other | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/31/2022 | Monthly Int, M P Accrual & SF | $0.00 | $364.20 | $205.53 | $0.00 | $0.00 | $569.73 |
| 12/31/2021 | Monthly Int, M P Accrual & SF | $0.00 | $362.82 | $204.94 | $0.00 | $0.00 | $567.76 |
| 12/4/2021 | Loan Setup - Advances (Principal) | $136,913.72 | $0.00 | $0.00 | $0.00 | $0.00 | $136,913.72 |
| 12/4/2021 | Loan Setup - Interest Balance | $0.00 | $36,501.43 | $0.00 | $0.00 | $0.00 | $36,501.43 |
| 12/4/2021 | Loan Setup - Monthly MIP Balance | $0.00 | $0.00 | $21,218.89 | $0.00 | $0.00 | $21,218.89 |
| 12/4/2021 | Loan Setup - Property Charges Balance | $2,105.44 | $0.00 | $0.00 | $0.00 | $0.00 | $2,105.44 |
| **Totals** | | **$142,152.16** | **$49,732.51** | **$25,040.12** | **$0.00** | **$0.00** | **$216,924.79** |



# PHH Mortgage Services

06/15/2023 02:20:13 PM

## Disbursement Detail Report

| Servicer Name: | ALL | Product Type: | ALL | Disb. Type | ALL | Disb. Date: | ALL | Disb. Status: | All |
|---|---|---|---|---|---|---|---|---|---|
| Investor Name: | ALL | Pay Plan Type: | ALL | Reimbursable: | Included | Fund Req. Date: | ALL | ARM Type: | ALL |
| Investor Pool: | ALL | Transaction Type: | ALL | Voided: | Included | Voided Date: | ALL | Rate Index Type: | ALL |
| Loan Status: | ALL | Property State: | ALL | Cleared: | Included | Cleared Date: | ALL | | |
| Loan Sub-Status: | ALL | Created By: | ALL | Pymt Stopped: | Included | Process Date: | ALL | | |
| Loan Skey: | ▮ | Credit Type: | ALL | Check #: | ALL | Create Date: | ALL | | |

| Investor Pool | Loan Skey | Loan # | Loan Status | Payment Plan | Disbursement Type | Pay To | Check / ACH # | Created By | Create Date | Process Date | Disb. Date | Disb. Amount | Disbursement Status | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Disbursed | Cleared | Voided | Reimb. | Stopped |
| **Servicer Name: PHH Mortgage Corporation** | | | | | | | | | | | | | | | | | |
| ▮ | | | BNK/DEF | Line of Credit | Insurance - Check | Insureco Ins Agency | ▮ | System Process | 01/25/2023 | 01/27/2023 | 01/30/2023 | $3,133.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| | | | BNK/DEF | Line of Credit | Corporate Advance - Check | Black Knight Real Estate Data Solutions, LLC | | System Process | 02/07/2022 | 02/09/2022 | 02/10/2022 | $0.64 | ☑ | ☑ | ☐ | ☐ | ☐ |
| | | | BNK/DEF | Line of Credit | Corporate Advance - Check | McCabe, Weisberg & Conway, P | | System Process | 04/19/2022 | 04/19/2022 | 04/20/2022 | $100.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| | | | BNK/DEF | Line of Credit | Corporate Advance - Check | McCabe, Weisberg & Conway, P | | System Process | 04/20/2022 | 04/20/2022 | 04/21/2022 | $75.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| | | | BNK/DEF | Line of Credit | Corporate Advance - Check | McCabe, Weisberg & Conway, P | | System Process | 04/20/2022 | 04/20/2022 | 04/21/2022 | $26.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| | | | BNK/DEF | Line of Credit | Corporate Advance - Check | McCabe, Weisberg & Conway, P | | System Process | 04/20/2022 | 04/20/2022 | 04/21/2022 | $3.12 | ☑ | ☑ | ☐ | ☐ | ☐ |
| | | | BNK/DEF | Line of Credit | Corporate Advance - Check | Charles A. Brown & Associates, P.L.L.C | | System Process | 01/26/2023 | 01/30/2023 | 01/31/2023 | $80.00 | ☑ | ☑ | ☐ | ☐ | ☐ |
| | | | BNK/DEF | Line of Credit | Corporate Advance - Check | Black Knight Real Estate Data Solutions, LLC | | System Process | 02/13/2023 | 02/16/2023 | 02/17/2023 | $0.63 | ☑ | ☑ | ☐ | ☐ | ☐ |
| | | | BNK/DEF | Line of Credit | Corporate Advance - Check | Black Knight Real Estate Data Solutions, LLC | | System Process | 02/17/2023 | 02/23/2023 | 02/24/2023 | $0.64 | ☑ | ☑ | ☐ | ☐ | ☐ |
| **Total for Investor: PHH Mortgage Services** | | | | Loan Count: 1 | | Disbursement C | | | | | | $3,419.03 | 9 | 9 | 0 | 0 | 0 |
| **Total for Servicer: PHH Mortgage Corporation** | | | | Loan Count: 1 | | Disbursement Count: 9 | | | | | | $3,419.03 | 9 | 9 | 0 | 0 | 0 |
| **Grand Total:** | | | | Loan Count: 1 | | Disbursement Count: 9 | | | | | | $3,419.03 | 9 | 9 | 0 | 0 | 0 |

Alerts Included: **ALL**
Alerts Excluded: **None**



## PHH Mortgage Services

06/15/2023 02:20:21 PM

### Remittance Detail Report

| | |
|---|---|
| Servicer Name: | **ALL** |
| Investor Name: | **ALL** |
| Investor Pool: | **ALL** |
| Loan Channel: | **ALL** |
| Loan Skey: | ▮ |
| Remit Trans. T | ▮ |

| | |
|---|---|
| Product Type: | **ALL** |
| Loan Status: | **ALL** |
| Loan Sub-Status: | **ALL** |
| Remit. Type: | **ALL** |
| Remit. Amount: | **ALL** |
| Remit Status: | **ALL** |

| | |
|---|---|
| Remit Create Date: | **ALL** |
| Remit. Created By: | **ALL** |
| Remit. Effective Date: | **ALL** |
| Ref. Check #: | **ALL** |
| Remitted By: | **ALL** |
| Batch Skey: | **ALL** |
| Mail Room Batch #: | **ALL** |

| Loan Skey | Loan # | Loan Status | Loan Sub-Status | Batch Skey | Transaction Type | Effective Date | Remit Type | Remit Status | Remit Amount | Check Date | Reference Check # | Created By | Create Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| - - | | | | | | | | | | | | | |
| | | | | | | | | | $0.00 | | | | |
| Total for | | | | Loan Count: 0 | | | Remit Transaction(s) Count: 1 | | $0.00 | | | | |
| **Total for** | | | | **Loan Count: 0** | | | **Remit Transaction(s) Count: 1** | | $0.00 | | | | |
| **Grand Total:** | | | | **Loan Count: 0** | | | **Remit Transaction(s) Count: 1** | | $0.00 | | | | |

**\*\* No matches found for your selection criteria \*\***

Alerts Included: **ALL**
Alerts Excluded: **NONE**

Created By:

**PHH**
MORTGAGE

P.O. Box 24606
West Palm Beach, FL 33416

Statement Date: June 01, 2023
Month Ending: May 31, 2023

# Monthly Statement

00001
Phyllis Rell
537 W RICHARDSON AVE
LANGHORNE, PA 19047

### *** THIS IS NOT A BILL ***

| Account Information | |
|---|---|
| Pay Plan Type: | Line of Credit |
| Funded Date: | 05/28/2014 |
| Loan #: | ▮▮▮▮▮ |
| Borrower: | Phyllis Rell |
| Property: | 537 W RICHARDSON AVE LANGHORNE, PA 19047 |

| *Credit Line Set Aside Information | |
|---|---|
| Original Credit Line: | $0.00 |
| Current Gross Credit Line: | $0.00 |
| Unsch. Credit Line Disb. Bal. (-): | $0.00 |
| Net Credit Line Set Aside (=): | **$0.00** |

*Modified Term or Modified Tenure only*

## Interest Rates

ARM Type: Monthly          Rate Index: 1-Month LIBOR

| Month | Index | Margin | Int. Rate (Index+Margin) |
|---|---|---|---|
| May | 4.831% | 2.125% | 6.956% |
| June | 5.062% | 2.125% | 7.187% |
| July(**) | 5.154% | 2.125% | 7.279% |

*Your Reverse Mortgage loan has a variable-rate feature; the monthly and daily periodic rates may vary as a result. Please refer to important information found on the back of this monthly statement and on the additional page.*

## Principal Limit Information

| | |
|---|---|
| Original Principal Limit: | $140,505.00 |
| Current Principal Limit: | $210,898.79 |
| Loan Balance (-): | $216,924.79 |
| Repair Set Aside (-): | $0.00 |
| First Year Set Aside (-): | $0.00 |
| Credit Line Set Aside (-): | $0.00 |
| Life Expectancy Set Aside Amt (-): | $0.00 |
| Servicing Fee Set Aside (-): | $0.00 |
| Net Principal Limit (=): | **($6,026.00)** |

## Interest Rate Information

### ANNUAL PERCENTAGE RATE (APR): 8.206%

| Loan Periodic Rates: | | Mortgage Insurance Premium (MIP) Periodic Rates: | | Finance Charge: | |
|---|---|---|---|---|---|
| Monthly Periodic Rate on Applicable Principal Balance: | 0.580% | MIP Monthly Periodic Rate on Applicable Principal Balance: | 0.104% | Periodic **Finance Charge:** | **$1,248.90** |
| Daily Periodic Rate on Applicable Advances or Payments: | 0.019% | MIP Daily Periodic Rate on Applicable Advances or Payments: | 0.003% | | |
| Corresponding APR: | 6.956% | Corresponding APR: | 1.250% | | |

### ** Notice of Changes in your Interest Rate on your Adjustable Rate Reverse Mortgage

On July 01, 2023, the interest rate on your adjustable-rate Reverse Mortgage will increase from 7.187% to 7.279%. Your present interest rate was based on an index value of 5.062%. To determine your new interest rate, we added the current index value of 5.154% as of May 29, 2023 as published by the Wall Street Journal, to the agreed upon margin of 2.125% for a total of 7.279%. This new rate has not been rounded to the nearest 1/8th percent. The initial interest rate on your mortgage was 2.274%, which may not be increased beyond 12.274% during the life of the mortgage.

### Total Funds Available

| Net Credit Line Set Aside + Net Principal Limit = | **$0.00** |
|---|---|

If you have any questions or would like further information on your reverse mortgage, please call our Customer Service Support Team at the number shown below. They are available to assist you Monday - Thursday 8:00 AM to 8:00 PM Eastern Time & Friday 8:00 AM to 7:00 PM Eastern Time.

Loan Ske ▮▮▮
Rep. Ske ▮▮▮

P.O. Box 24606, West Palm Beach, FL 33416
Phone (866) 503-5559 ~ FAX (561) 682-8644 ~ TRS 711
Email customerassist@phhreverse.com

Page 1 of 4

**PHH**
**MORTGAGE**

P.O. Box 24606
West Palm Beach, FL 33416

Statement Date: June 01, 2023
Month Ending:   May 31, 2023

## Loan Balance Activity

| | Current Month | Year To Date |
|---|---|---|
| Previous Loan Balance: | **$215,451.46** | **$206,834.45** |
| Loan Advance / Scheduled Payment (if applicable): | $0.00 | $0.00 |
| Loan Advance / Unscheduled Disbursements (if applicable): | $0.00 | $0.00 |
| Repair Set Aside Disbursements: | $0.00 | $0.00 |
| Taxes Paid: | $0.00 | $0.00 |
| Insurance Paid: | $0.00 | $3,133.00 |
| Other Property Charges: | $0.00 | $0.00 |
| Interest **(Finance Charge)**: | $1,248.90 | $5,852.89 |
| MIP **(Finance Charge)**: paid to HUD: | $224.43 | $1,104.45 |
| Monthly Servicing Fee **(Finance Charge)**: | $0.00 | $0.00 |
| Change of Plan Fee/Misc. **(Finance Charge)**: | $0.00 | $0.00 |
| Repayments (See Transaction Information): | $0.00 | $0.00 |
| *Total Balance Activity:* | *$1,473.33* | *$10,090.34* |
| Closing Loan Balance as of May 31, 2023: | **$216,924.79** | **$216,924.79** |
| * Corporate Advance (not part of Loan Balance): | $0.00 | $0.00 |

## Transaction Information

| Transaction Date | Effective Date | Transaction Description | Principal Advances | Interest | MIP | Servicing Fee | Cumulative Loan Advances this Month | *Corporate Advance (not part of Loan Balance) |
|---|---|---|---|---|---|---|---|---|
| 5/31/2023 | 5/31/2023 | Monthly Interest, MIP Accrual & SF | $0.00 | $1,248.90 | $224.43 | $0.00 | $1,473.33 | $0.00 |
| **Grand Total:** | | | **$0.00** | **$1,248.90** | **$224.43** | **$0.00** | **$1,473.33** | **$0.00** |

*(Int) Interest - (MIP) Mortgage Insurance Premium - (SF) Servicing Fee - (Disb) Advance Disbursement - (Part Repay) Partial Repayment*

Loan Sk
Rep. Ske

P.O. Box 24606, West Palm Beach, FL 33416
Phone (866) 503-5559 ~ FAX (561) 682-8644 ~ TRS 711
Email customerassist@phhreverse.com

Page 2 of 4

**PHH**

**MORTGAGE**

P.O. Box 24606
West Palm Beach, FL 33416

Statement Date:  June 01, 2023
Month Ending:    May 31, 2023

**A. ANNUAL PERCENTAGE RATE (APR)**
The ANNUAL PERCENTAGE RATE for the interest portion of your FINANCE CHARGE may increase or decrease annually based upon  changes in  the ("Index").
Therefore, the monthly and daily periodic rates relating to the interest portion of your FINANCE CHARGE may vary.  To determine the ANNUAL PERCENTAGE RATE that
will apply to your  Account, we add a margin to the value of the Index, subject to certain rate limitations as provided in your Reverse Mortgage Note.

The corresponding annual percentage rate for the interest portion of the FINANCE CHARGE does not include costs other than interest. The historical ANNUAL
PERCENTAGE RATE includes interest and all other FINANCE CHARGES that relate to your loan.

**B. FINANCE CHARGES**
Each advance or payment made to you or on your behalf under your Reverse Mortgage will be subject to a FINANCE CHARGE beginning on the day after each advance or
payment is made.  A FINANCE CHARGE will continue to be assessed on your Reverse Mortgage until the entire outstanding balance and all fees due under the Notes,
Security Instruments and Loan Agreement are paid.

**C. INTEREST**
The interest portion of the FINANCE CHARGE on your Account is computed by (i) calculating the FINANCE CHARGE on the balance existing at the beginning of each
month, which includes any payments or credits applied to your loan during the previous month, (ii) calculating the FINANCE CHARGE on each advance, payment or credit
made to you or on your behalf during the month, and then (iii) adding all of these sums together, as follows:

We start with the outstanding principal balance on your Account at the beginning of each month, which includes FINANCE CHARGES from the previous month (the
"Previous Loan Balance").  At the end of each month, we multiply the Previous Loan Balance by  he then-current ANNUAL PERCENTAGE RATE divided by 12 ( he "Monthly
Periodic Rate").

At the end of each month in which any advances (also known as disbursements and labeled as "Disb" on  this statement) or payments have been made to you on your
behalf, we multiply the amount of the advance or payment by the number of days remaining in the month after that advance or payment was made (not including the day the
advance was made) and then multiply this amount by the then-current ANNUAL PERCENTAGE RATE divided by 365 (the "Daily Periodic Rate").  This calculation is
repeated for each advance or payment made to you or on your behalf during the month.

The sum of the final result of these calculations equals the interest portion of your FINANCE CHARGE for the month.

**D. MORTGAGE INSURANCE PREMIUMS (MIP)**
In addition, mortgage insurance premiums ("MIP"), which are a FINANCE CHARGE, are computed by as follows:

At the end of each month, we multiply the lesser of the Previous Loan Balance or the maximum balance on which HUD requires MIP to be paid to it by your MIP rate divided
by 12 (the "MIP Monthly Period Rate").  At the end of each month in which any advances (also known as disbursements and labeled as "Disb" on this statement) or
payments have been made to you or on your behalf, we multiply the amount of the advance or payment (other than any advance or payment that exceeds the maximum
advances or payments on which HUD requires MIP to be paid) by the number of days remaining in the month after that advance or payment was made (not including the day
the advance was made), and then multiply this amount by your MIP rate divided by 365 (the "MIP Daily Periodic Rate").  This calculation is repeated for each advance or
payment made to you or on your behalf during the month.

The sum of the final result of these calculations equals the mortgage insurance portion of your FINANCE CHARGE for the month.

**E. CALCULATION OF BALANCES**
The "Principal Limit Informa ion" section on the front of  he monthly statement shows your "Original Principal Limit" and your "Net Principal Limit" which includes any "Set
Asides".  The "Loan Balance" section on page 2 of this monthly statement shows your prior month's Previous Loan Balance and your current month's Closing Loan Balance,
which includes the current month's activity. If you would like to determine your payoff balance or if you have any questions on this monthly statement, please call the
telephone number listed on the bottom of this monthly statement.

**F. OTHER INFORMATION**
We compute the interest and other fees assessed on your loan monthly.  This information is available on page 2 of this monthly statement each mon h.  This monthly
statement indicates both the current month and year to date interest and other fees.  If you repay all or a portion of your loan balance and the annual interest paid due to a
repayment exceeds $600, a separate IRS Form 1098 will be mailed to you by January 31st. Interest accrued on this loan, other than repayments, will not be reported to the
IRS until the loan is paid in full.

**G. BILLING RIGHTS SUMMARY**
In case of errors or questions about your loan monthly statement, you will need to contact us as follows:

If you think your monthly statement is wrong or you need more information about a transaction on your monthly statement, write us at Reverse Mortgage Service Center,
Attn: Billing Department, P.O. Box 24606, West Palm Beach, FL 33416.  Write to us as soon as possible.  We must hear from you no later than 60 days after we send you
the FIRST monthly statement on which the error or problem appeared.  You can telephone us, but doing so will not preserve your rights.  In your letter, give us the following
information:
    1. Your name and loan number
    2. The dollar amount of the suspected error
    3. Describe the suspected error and explain, if you can, why you believe there is an error

Loan 
Rep. S

P.O. Box 24606, West Palm Beach, FL 33416
Phone (866) 503-5559 ~ FAX (561) 682-8644 ~ TRS 711
Email customerassist@phhreverse.com

Page 3 of 4



**MORTGAGE**

P.O. Box 24606
West Palm Beach, FL 33416

Statement Date: June 01, 2023
Month Ending:   May 31, 2023

We will acknowledge your letter within 30 days.  Within 90 days, we will either correct the error or explain why we believe the monthly statement was correct.  If we determine the monthly statement was not correct, we will credit the disputed amount along with any associated interest charges.  While under investigation, you will continue to see the disputed amount on your monthly statement; however, you do not have to pay any disputed amount or the interest charges that apply to it.  Even though payments are not required on a reverse mortgage, by law, you are still required to meet all obligations as outlined in your Notes, Security Instruments and Loan Agreement.  This includes paying your property taxes and insurance premiums.

**H. CREDIT INFORMATION**
Regular monthly installment payments are not required on this loan unless you have a repayment plan for a delinquent account. However, you have the obligation to pay your property taxes and insurance premiums. The loan must be repaid in full in one payment if your loan has been called "Due and Payable". Payments may be made by check, money order or wired funds, payable in U.S. Dollars. Do not send cash. Payments must be mailed to the address listed on the bottom of this monthly statement. Payments are allocated as described in your Note.

Loan Sk
Rep. Sk

P.O. Box 24606, West Palm Beach, FL 33416
Phone (866) 503-5559 ~ FAX (561) 682-8644 ~ TRS 711
Email customerassist@phhreverse.com

Page 4 of 4

## Balance Details

### Principal Limit Calculation

| | |
|---|---|
| Orig. Principal Limit: | $140,505.00 |
| **Current Principal Limit:** | $210,898.79 |
| Principal Balance: | $142,152.16 |
| Interest Balance: | $49,732.51 |
| MiP Balance: | $25,040.12 |
| Service Fee Balance: | $0.00 |
| - **Loan Balance:** ▲ Less | $216,924.79 |
| - Service Fee Set-Aside: | $0.00 |
| - Repair Set-Aside: | $0.00 |
| - First Year Set-Aside: | $0.00 |
| - Credit Line Set-Aside: | $0.00 |
| - Life Expectancy Set-Aside: | $0.00 |
| ★=Net Principal Limit: | ($6,026.00) |

### Life Expectancy Set-Aside

| | |
|---|---|
| LESA Type: | Not Required |
| LESA Payment Status: | LESA-Active Payments |
| Semi-Annual Payment: | $0.00 |

### Loan Balance Distribution



Prin Bal   Int Bal   MIP   SF Bal

### Other Balances

| | |
|---|---|
| Tax & Ins. Withheld: | $0.00 |
| IMIP Paid By Borrower: | $6,375.00 |
| IMIP Paid By Lender: | $0.00 |

### Pay Plan Information

| | |
|---|---|
| Pay Plan Type: | Line of Credit |
| Payment Status: | Payment Suspended |
| Monthly Payment: | $0.00 |
| Monthly Tax & Ins. Withheld: | $0.00 |
| Net Monthly Payment: | $0.00 |
| # of Remaining Payments: | 0 |
| Maximum Claim: | $255,000.00 |
| Monthly Service Fee: | $0.00 |
| Print Statements: | ☑ |
| Prohibit All Correspondence: | ☐ |

### Credit Line Information

| | |
|---|---|
| Current Net Credit Line: | $0.00 |

★ Net Principal Limit = Current Principal Limit - Loan Balance - Set Asides

## Loan Summary

### Default

| | |
|---|---|
| Default Reason: | Unpaid Insurance |
| Due & Payable Date: | |
| Notice Sent to Borrower: | |
| Death Date: | |
| Servicer Notified of Death: | |
| Notice of Default to HUD: | |
| Title Ordered: | |
| Title Received: | |
| Appraisal Ordered: | |
| Appraisal Effective Date: | |
| Appraisal Received: | |
| Inspection Ordered: | |
| Inspection Received: | |
| Property Location Type: | |
| Auto 90-Day Extension: | |
| Total # of Approved Extensions: | 0 |
| Due & Payable Loan Balance: | |
| Extension Expiration: | |

### Foreclosure/Loss Mitigation

| | |
|---|---|
| Referred to Counsel: | |
| First Legal Due Date: | |
| First Legal Filed Date: | |
| HUD Notice of Initiation of FCL: | |
| Appraisal Ordered: | |
| Appraisal Effective Date: | |
| Appraisal Received: | |
| Liquidation Event: | |
| Sale Date: | |
| Property Sold To: | |
| Deed Recorded Date: | |
| Data Gram Completed: | |
| Referred to REO: | |

### Bankruptcy

| | |
|---|---|
| # of Days in Bankruptcy: | 1573 |
| # of Bankruptcies: | 1 |
| Bankruptcy Type: | Bankruptcy - Chapter 13 |
| Bankruptcy Filed Date: | 2/23/2019 ✓ |
| Bankruptcy Discharged Date: | |

### REO

| | |
|---|---|
| Marketable Title: | |
| REO Sale Date: | |
| REO Sale Price: | $0.00 |
| REO Net Proceeds: | $0.00 |
| Referred to Claims: | |

### Tax and Insurance

| | |
|---|---|
| Original Transfer Property Charge: | $2,105.44 |
| Transfer Property Charge Balance: | $2,105.44 |
| Prop Charge Pre D&P Balance: | $3,133.00 |
| Corp Adv S305 Flood Ins Balance: | $0.00 |
| Corp Adv S305 Hazard Ins Balance: | $0.00 |
| Corp Adv S305 Ground Rent Balance: | $0.00 |
| Corp Adv S305 Taxes Balance: | $0.00 |
| Corp Adv S305 HOA Balance: | $0.00 |
| TOTS Balance: | $5,238.44 |
| Active Repayment Plan: | No |
| Payment Status: | N/A |
| # Repayments Made: | N/A |
| # Repayments Remaining: | N/A |

★ All date fields represent the completion date of their corresponding tasks.

# EXHIBIT "F"

**PHH**
**MORTGAGE**

## PHH Mortgage Services

### Internal Payoff Statement

Data Update Date: 6/14/2023

| | | |
|---|---|---|
| Loan Skey: | | |
| Loan Number: | | |
| Borrower Last Name: | Rell | |
| Property Address | 537 W RICHARDSON AVE, LANGHORNE, PA 19047 | |
| As of Date: | | 06/15/2023 |
| Good through Date: | | 06/15/2023 |
| Principal Advances: | | $ 142,152.16 |
| Interest: | | $ 49,732.51 |
| Interest Rate Type | Monthly (1-Mth LIBOR) | |
| Current Interest Rate | 7.19 | |
| MIP: | | $ 25,040.12 |
| MIP Rate | 1.25 | |
| Servicing Fees: | | $ 0.00 |
| Corporate Advances: | | $ 0.00 |
| Intra Month Per Diem Total: | | $ 752.13 |
| Total Amount Due: | | $ 217,676.92 |
| Per Diem Post Good Through Date** | | 50.34 |

*NOTE: this is a not an external payoff and should not be relied upon if the loan is to be paid in full

**per diem is as of the date generated. Any advances incurred between the as of date and the good through date will increase per diem and will not be included here.

**EXHIBIT "G"**

| | | | |
|---|---|---|---|
| Debtor 1 | **Allan Rell** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Phyllis Y Rell** | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF PENNSYLVANIA | | |
| Case number | | | |

☐ Check if this is an
amended filing

# Official Form 106A/B
# Schedule A/B: Property                                              12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

| | | |
|---|---|---|
| **1.1** | | |
| **537 W. Richardson Avenue** | | |
| Street address, if available, or other description | | |

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| | | |
|---|---|---|
| **Langhorne** | **PA** | **19047-0000** |
| City | State | ZIP Code |

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$211,500.00** | **$211,500.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

| | |
|---|---|
| **Bucks** | |
| County | |

☐ **Check if this is community property**
(see instructions)

Other information you wish to add about this item, such as local property identification number:

**Market Value $235,000.00 minus 10% cost of sale = $211,500.00**

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................................=>

| |
|---|
| **$211,500.00** |

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*